# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| RICARDO AGUILAR GARCIA,<br><br>Plaintiff-Petitioner,<br><br>v.<br><br>UNITED STATES ATTORNEY GENERAL PAM BONDI et al.,<br><br>Defendants-Respondents. | Case No. 3:25-cv-05070<br><br>**ORDER GRANTING *EX PARTE* TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>[Re: Dkt. No. 2] |

Before the Court is Petitioner-Plaintiff Ricardo Aguilar Garcia's *Ex Parte* Motion for Temporary Restraining Order. Dkt. No. 2 ("Mot."). Petitioner-Plaintiff simultaneously filed his Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Respondents-Defendants Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi on June 14, 2025, seeking an order temporarily enjoining the Department of Homeland Security ("DHS"), their agents, employees, and successors in office from re-detaining him until such time as he has had an opportunity to challenge his re-detention before a neutral decisionmaker. *Id.* at 1. Petitioner-Plaintiff states that he was released from immigration custody nearly six years ago, but fears that there is a substantial and immediate risk that he will be re-detained at an in-person Immigration and Customs Enforcement ("ICE") check-in appointment this weekend. *Id.*

For the following reasons, the Court GRANTS Petitioner-Plaintiff's *Ex Parte* Motion for Temporary Restraining Order.

**I.   BACKGROUND**

Petitioner-Plaintiff was born in Mexico and has lived in the United States since he was approximately three years old. Dkt. No. 1 ("Petition") ¶ 12. He is now thirty-one years old and lives in Hayward, California. *Id.* ¶ 17. He was previously granted status under the Deferred Action for Childhood Arrivals ("DACA") Program from 2013 to 2015, and has recently filed a new application for DACA status. *Id.* ¶¶ 26–27. Petitioner-Plaintiff is married to Heaven Ramos, a U.S. citizen, and is a stepfather to Ms. Ramos's five-year-old child. *Id.* ¶ 20. He supports Ms. Ramos in her academic studies and in her struggle with a long-term, chronic illness that is exacerbated by stress. *Id.* ¶ 21.

In 2018, Petitioner-Plaintiff was charged as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* ¶ 18. After he was ordered removed by the Immigration Judge and his appeal was denied by the Board of Immigration Appeals ("BIA"), as was his motion to reopen before the BIA, the Ninth Circuit denied his petitions for review on both BIA decisions. *Id.* ¶¶ 18–19. But the Ninth Circuit granted his motion to stay issuance of the mandate in that case for ninety days from May 23, 2025, to allow him to seek reopening of his case before the BIA based on newfound eligibility for relief from removal. *Id.* ¶ 19; *see* Petition Ex. F.

After being held in Immigration and Customs Enforcement ("ICE") custody during 2018 and 2019, Petitioner-Plaintiff was released on bond under an order of supervision. *Id.* ¶ 22. Since his release, he has been out of custody and has complied with reporting requirements. *Id.* ¶ 2. Petitioner-Plaintiff received notification at 2:18 p.m. on Friday, June 13, 2025 that he was required to report to the Intensive Supervision Appearance Program ("ISAP") office in person in San Francisco on either Saturday, June 14, 2025 or Sunday, June 15, 2025. *Id.* ¶ 3. No reason was given and ISAP did not respond to Petitioner-Plaintiff or his counsel's inquiries regarding the purpose of the check-in. *Id.* Petitioner-Plaintiff received the notice to report while driving his wife to the emergency room for a health concern. *Id.* ¶ 33. Thereafter, he filed the present Petition for a Writ of Habeas Corpus and *Ex Parte* Motion for a Temporary Restraining Order, seeking to enjoin Respondents-Defendants from re-detaining him at his upcoming in-person check-in with immigration authorities.

2

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner-Plaintiff's attorney has set out specific facts showing that "immediate and irreparable injury, loss, or damage" may result before the adverse party can be heard in opposition and has stated that counsel attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on Friday, June 13, 2025 regarding the forthcoming

3

1   Habeas Petition and Motion for Temporary Restraining Order.  *See* Dkt. Nos. 1-1 & 2 at 2.

2       The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in his favor.  *Weber*, 767 F.3d at 942.  Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.  *See Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

    For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—support requiring a pre-detention hearing for Petitioner-Plaintiff.  Petitioner-Plaintiff has a substantial private interest in remaining out of custody on bond, which "enables him to do a wide range of things open to persons" who are free from custody, such as working, living at home, and "be[ing] with family and friends . . . to form the enduring attachments of normal life."  *See* Mot. at 10;

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against.  And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-Plaintiff without a hearing is "low," particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements.  *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970.

Petitioner-Plaintiff is also likely to suffer immediate and irreparable harm in the absence of preliminary relief.  The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained."  *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).  Both risks are present here, where Petitioner-Plaintiff has a stepchild and spouse who both depend upon him for support.  Dkt. No. 1-1, Declaration of Raha Jorjani in Support of Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order ("Jorjani Decl.") ¶¶ 12, 21–22.  Indeed, as of the time of filing of the motion, Petitioner-Plaintiff was at the emergency room with his wife.  *Id.* ¶ 12.  In addition, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner-Plaintiff's favor.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").  Without the requested injunctive relief, Petitioner-Plaintiff might be abruptly taken into ICE custody, subjecting both him and his family to significant hardship.  *See* Mot. at 13.  Yet the comparative

5

harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

Accordingly, the Court hereby GRANTS Petitioner-Plaintiff's Motion for a Temporary Restraining Order. Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner-Plaintiff's *Ex Parte* Motion for Temporary Restraining Order is GRANTED to preserve the status quo pending further briefing and a hearing on this matter. Respondents-Defendants are ENJOINED AND RESTRAINED from re-detaining Petitioner-Plaintiff without notice and a hearing. This Order shall remain in effect until Monday, June 23, 2025 at 5:00 p.m. The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents-Defendants such that they receive actual notice by no later than Monday, June 16, 2025 at 2:00 p.m.

Respondents-Defendants are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on **Monday, June 23, 2025 at 1:00 p.m.** why a preliminary injunction should not issue. Respondents-Defendants shall file a response to Petitioner-Plaintiff's motion by no later than Wednesday, June 18, 2025 at 5:00

p.m. No reply shall be filed.

**IT IS SO ORDERED.**

Dated: June 14, 2025 at 1:15 p.m.

*/s/ Beth Labson Freeman*
BETH LABSON FREEMAN, as Duty Judge
United States District Judge