UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO AGUILAR GARCIA,<br>Petitioner,<br>v.<br>POLLY KAISER, et al.,<br>Respondents. | Case No. 3:25-cv-05070-JSC<br><br>**ORDER RE: MOTION FOR PRELIMINARY INJUNCTION**<br>Re: Dkt. No. 1 |

Petitioner filed this petition for a writ of habeas corpus with a motion for a temporary restraining order seeking an order enjoining the Department of Homeland Security ("DHS"), their agents, employees, and successors in office from re-detaining him until such time as he has had an opportunity to challenge his re-detention before a neutral decisionmaker. (Dkt. No. 1.[1]) The Court granted the motion for a temporary restraining order and issued an order to show cause as to why a preliminary injunction should not issue. (Dkt. No. 3.) The government thereafter agreed to an extended briefing schedule on the motion for a preliminary injunction and agreed the temporary restraining order would remain in effect while the motion for a preliminary injunction is pending. (Dkt. No. 16.) Having considered the parties' initial and supplemental briefing and the relevant legal authority, and having had the benefit of oral argument on October 23, 2025, the Court DENIES the motion for preliminary injunction.

**BACKGROUND**

Petitioner, a non-citizen, has resided in the United States since 1997. (Dkt. No. 1-1 at ¶ 5.) In 2013, he was granted DACA status for two years, but that status expired in 2015. (*Id.*) In

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1  2018, he was placed in removal proceedings and charged as removable under 8 U.S.C. §

2  1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who

3  arrives in the United States at any time or place other than as designated by the Attorney General,

4  is inadmissible"). (Dkt. No. 17-1 at ¶ 5.) On December 20, 2018, an immigration judge ordered

5  Petitioner removed to Mexico. (Dkt. No. 1-1 at ¶ 2; Dkt. No. 17-1 at ¶ 8.) After nearly a year in

6  detention, Petitioner was released on bond on July 3, 2019. (Dkt. No. 17-1 at ¶ 13.) Six days later,

7  the Board of Immigration Appeals (BIA) denied his appeal of the removal order. (*Id*. at ¶ 14.)

8      Petitioner filed a petition for review to the Ninth Circuit Court of Appeals, *see Aguilar*

9  *Garcia v. Bondi*, No. 19-71917, which automatically stayed his removal until further order of the

10  court. (Dkt. No. 17-1 at ¶ 16.) In May 2020, Petitioner filed a motion to reopen with the BIA

11  which was denied, in part, as untimely in June 2023. (*Id.* at ¶¶ 18-19.) Petitioner thereafter filed

12  with the Ninth Circuit a petition for review of the denial of his motion to reopen, *see Aguilar*

13  *Garcia v. Bondi*, No. 23-1536, which was consolidated with his earlier filed petition for review.

14  (*Id.* at ¶¶ 20-21.)

15      On February 28, 2025, the Ninth Circuit denied Petitioner's two petitions for review and

16  his motion for stay, but kept the temporary stay of removal in place until issuance of the mandate.

17  *Garcia v. Bondi*, No. 19-71917, 2025 WL 655056, at *2 (9th Cir. Feb. 28, 2025), amended and

18  superseded on reh'g, No. 19-71917, 2025 WL 1341670 (9th Cir. May 8, 2025). Petitioner filed a

19  petition for panel rehearing and on May 8, 2025 the Ninth Circuit issued an amended decision

20  denying the consolidated petitions for review. Shortly thereafter, the Ninth Circuit granted

21  Petitioner's motion to stay issuance of the mandate so that he could file a motion to reopen. (Dkt.

22  No. 17-1 at ¶¶ 25-26.)

23      The motion to reopen was based on Petitioner's April 10, 2025 marriage to a U.S. Citizen

24  which renders him eligible for cancellation of removal for nonpermanent residents under 8 U.S.C.

25  § 1129b(b). (Dkt. No. 1 at ¶ 20; Dkt. No. 1-1 at ¶ 19.) Petitioner financially supports his wife,

26  who is a full-time student and struggles with a chronic medical condition, and his five-year-old

27  stepson who also has health challenges. (Dkt. No. 1-1 at ¶¶ 12, 21-22.) On June 4, 2025,

28  Petitioner's wife filed an I-130 visa petition on his behalf. (Dkt. No. 1-1 at ¶ 20.) On September

1  18, 2025, Petitioner also filed a motion to stay removal with the BIA. (Dkt. No. 24 at 7, n.1.)

2  Shortly before Petitioner's marriage, on March 17, 2025, Petitioner received notice to
3  report to the Intensive Supervision Appearance Program (ISAP) two days later. (Dkt. No. 1-1 at ¶
4  7.) Petitioner did so and was placed on an order of supervision. (*Id.*; Dkt. No. 1-1 at 15.) The
5  order of supervision provided Petitioner was permitted "to be at large" under certain conditions,
6  including that he again report for a check-in on May 1, 2025. (No. 1-1 at 15.) When he appeared
7  on May 1, he was told to reappear on August 1, but on June 13, he received a message to reappear
8  at the San Francisco ISAP Office the next day or the day after—Saturday or Sunday, June 14-15.
9  (Dkt. No. 1-1 at ¶¶ 8-9.) Petitioner then filed the underlying habeas petition and motion for a
10 temporary restraining order. (Dkt. Nos. 1, 2.) The court granted the motion for a temporary
11 restraining order and set a schedule for hearing his motion for a preliminary injunction. (Dkt. No.
12 3.) The parties stipulated to an extended briefing and hearing date on the preliminary injunction
13 and the government agreed the temporary restraining order could remain in effect until disposition
14 of the preliminary injunction. (Dkt. No. 9.)

15 After completion of the briefing on the motion for preliminary injunction, the Ninth Circuit
16 denied Petitioner's motion to extend the stay of the mandate. *See Ricardo Aguilar Garcia v.*
17 *Pamela Bondi*, No. 19-71917, Dkt. No. 102 (9th Cir. Aug. 29, 2025). The mandate issued on
18 September 10, 2025. The Court thereafter requested supplemental briefing regarding whether the
19 issuance of the mandate impacted the underlying petition. (Dkt. No. 22.) That briefing is now
20 complete (Dkt. Nos. 24, 25, 26), and the Court heard oral argument on October 23, 2025.

21 **DISCUSSION**

22 **A.    Statutory Basis for Detention and the Court's Jurisdiction**

23 As a preliminary matter, the government contends this Court lacks jurisdiction to grant
24 Petitioner's preliminary injunction motion. When this petition was filed, Petitioner's detention
25 was governed by 8 U.S.C. § 1226(a). But now that the Ninth Circuit's mandate has issued, the
26 parties agree his order of removal is final and his detention is governed by Section 1231. (Dkt.
27 No. 24 at 2; Dkt. No. 25 at 2.) "Section 1231(a) applies to detention after the entry of a final order
28 of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of

removal proceedings." *Avilez v. Garland*, 69 F.4th 525, 530–31 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)–(2)).[2] Section 1231(a) requires that the Attorney General physically remove an individual ordered removed within 90 days of the order. 8 U.S.C. § 1231(a)(1). It further requires that the individual remain detained during the 90-day removal period. 8 U.S.C. § 1231(a)(2); *see also Zadvydas v. Davis*, 533 U.S. 678, 698 (2001) (the statute "mandates" detention during the 90-day removal period).

The government urges that in light of the final removal order, 8 U.S.C. § 1252(g) deprives this Court of jurisdiction to grant the requested preliminary injunction relief. Section 1252(g) provides "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." As support for its contention that 1252(g) applies, the government relies on *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (concluding 8 U.S.C. § 1252(g) strips courts of jurisdiction to enjoin removal orders). *Rauda*, however, is inapposite. Rauda's 2241 petition sought to enjoin his removal while his motion to reopen was pending. *Rauda*, 55 F.4th at 777. The court concluded such request ran afoul of Section 1252(g)'s withholding jurisdiction for claims arising from the commencement, adjudication, or execution of removal orders. *Id.* Here, however, Petitioner does not seek to enjoin, or even challenge, his removal; instead, he seeks a hearing prior to his re-detention on the grounds he has a vested liberty interest in his current conditional release. (Dkt. No. 1 at 15-16.) Section "1252(g) d[oes] not bar due process claims." *Ibarra-Perez v. United States*, No. 24-631, --F.4th--, 2025 WL 2461663, at *7 (9th Cir. Aug. 27, 2025).

### B. Preliminary Injunction Factors

To obtain a preliminary injunction, Petitioner must establish that (1) he is "likely to succeed on the merits," (2) he is "likely to suffer irreparable harm in the absence of preliminary

---

[2] The "removal period" commences "on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." *Avilez*, 69 F.4th at 531 (quoting 8 U.S.C. § 1231(a)(1)(B)(i)–(iii)).

relief," (3) "the balance of equities tips in [his] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "If a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (*quoting Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

Petitioner contends the due process clause of the Fifth Amendment entitles him to a pre-detention hearing prior to being re-detained because he was previously conditionally released and remains on bond. (Dkt. No. 1 at 15-16 ("Mr. Aguilar Garcia has a vested liberty interest in his current conditional release, and Due Process does not permit the government to strip him of that liberty without his having the opportunity to argue against his re-detention prior to that re-detention taking place.").)

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil detention, including that of a non-citizen, violates due process in the absence of a "special justification" sufficient to outweigh one's "'constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)) (internal quotation marks omitted). "Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release…because, as courts have repeatedly recognized, conditional release from physical restraint gives rise to a protected liberty interest. *See Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *6 (N.D. Cal. Sept. 26, 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty); *Young v. Harper*, 520 U.S. 143, 150–53 (1997) (applying *Morrissey* to pre-parole)). "[E]ven when an initial decision to detain or release an

5

1  individual is discretionary, the government's subsequent release of the individual from custody
2  creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide
3  by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL
4  2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482). Numerous courts
5  in this District and elsewhere have concluded individuals released from immigration custody on
6  bond have a protectable liberty interest in remaining out of custody on bond. *Valencia Zapata*,
7  2025 WL 2741654, at *6. Indeed, the court relied on this liberty interest in granting the motion
8  for a temporary restraining order here. (Dkt. No. 3 at 4.)

However, since granting Petitioner's temporary restraining order, the statutory basis for Petitioner's detention has changed. "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). As the Ninth Circuit mandate issued on September 10, 2025, Petitioner falls within the 90-day removal period. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1060, n.5 (9th Cir. 2008) ("the removal period does not begin until the court of appeals (1) denies the motion for a stay or (2) grants the motion and finally denies the petition for review" and the "'finality of an appellate order hinges on the mandate'") (internal citation omitted). During the removal period, detention is mandatory: "During the removal period, the Attorney General shall detain the alien." 8 U.S.C.A. § 1231(a)(2)(A); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("[T]he Government generally must secure the noncitizen's removal during [the] 90-day 'removal period'" and "the Government 'shall' detain noncitizens during [this] statutory removal period.") (quoting 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)). So, Petitioner's liberty interest is not the same as when he was detained under 1226(a). In contrast to section 1231(a)(2) mandatory detention, "Section 1226(a) provides that the attorney general 'may' detain these noncitizens pending their removal proceedings and "may release" such individuals on 'bond ... or conditional parole.'" *Johnson*, 596 U.S. at 579 (quoting 8 U.S.C. §§ 1226(a)(1), (2)).

Petitioner argues that notwithstanding the mandatory language of the 90-day detention period, because he was released on bond before his final order of removal, the due process clause requires the government to provide him a pre-detention hearing and only detain him if he

6

somehow poses a risk of flight or danger to the community. Petitioner has not established a likelihood of success or serious questions going to the merits on this novel claim.

The Ninth Circuit has held "the period of detention under § 1231(a)(2) [] passes constitutional scrutiny." *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004). Petitioner identifies no case which suggests otherwise. The primary case Petitioner relies on, *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023), involved a long-detained petitioner who had a final order of removal entered while his habeas petition was pending such that he shifted from detention under 1226(c) to 1231(a)(2). There, the court concluded "the statutory basis for detention [does not] impact[] the analysis, particularly where the Government has made clear that Doe's continued detention is not speculative." *Id*. at 943. The court reasoned:

> [t]he IJ's final order of removal may have started a new clock for the Government to take a different type of action, but it did not reset the clock as to the time Doe has been detained without a bond hearing. Doe's continued civil detention of more than 22 months without a hearing to consider the risks related to his potential release on bond supports his due process claim.

*Id*. at 943. The court explained its "conclusion in this case is based on the length of Doe's detention without a hearing, not the statutory basis for his detention." *Id.* ("While statutory justification for Doe's detention has shifted, nothing has changed as a practical matter – his time behind bars continues to increase without any showing by Respondents that his civil detention is necessary to achieve the Government's non-punitive ends."). This reasoning is inapplicable to Petitioner who has been released on bond since 2019, and there is nothing currently before the Court that suggests if he is detained during the 90-day removal period he will remain in custody beyond that period.

Petitioner's reliance on cases involving individuals subject to mandatory detention under 1226(c) ("detention of criminal aliens") challenging their prolonged detention and seeking a second bond hearing is equally unpersuasive because in none was the petitioner within the 90-day removal period. *See, e.g*, *Espinoza v. Wofford*, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *12 (E.D. Cal. June 2, 2025) (considering whether the petitioner who had been detained under 1226(c) for 30-months was entitled to a second bond hearing once his order of removal became

7

final and he was beyond the 90-day removal window); *De La Rosa v. Murray*, No. 23-CV-06461-VC, 2024 WL 2646470, at *1 (N.D. Cal. Apr. 8, 2024) (considering whether the petitioner, a noncitizen from Mexico who had been in ICE custody for two years pursuant to 8 U.S.C. § 1226(c), was entitled to a bond hearing while his petition for review with the Ninth Circuit was pending); *see also Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, —F.Supp.3d—, 2025 WL 1983677 at *5 (N.D. Cal. July 17, 2025) ("Petitioner has already been detained for the 'mandatory' 90-day window, and any further detention would be subject to Section 1231(a)(6) under which he 'may' be released."); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 147, 166 (W.D.N.Y. 2025) (finding petitioner's due process rights were violated when he was detained without notice nearly 15 years after his removal order became final at a regularly scheduled ICE check-in).

In contrast to all these other cases, Petitioner is within the 90-day mandatory detention window of Section 1231(a)(2) and due process does not require a bond hearing at least until he is in the post-removal period. *See Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004) ("the due process analysis attaches in the post-removal period"). "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995). Petitioner therefore has not established a likelihood of success or serious questions on the merits of his habeas petition.

Having concluded Petitioner has failed to establish a likelihood of success, the Court need not reach the remainder of the *Winter* factors. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("a 'court need not consider the other factors' if a movant fails to show a likelihood of success on the merits.") (citation omitted); *Smith v. Helzer*, 95 F.4th 1207, 1215 (9th Cir. 2024) (affirming denial of a preliminary injunction after finding no likelihood of success and without discussing any other preliminary injunction factor). Petitioner's motion for a preliminary injunction is denied.

### C.     Order to Show Cause as to Mootness

"A federal court lacks [subject-matter] jurisdiction to hear a case that is moot"—that is, where no live controversy exists, and the petitioner can no longer obtain relief for his claim.

*Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1155 (9th Cir. 2017). This habeas petition was predicated on the government's detention authority while he was on conditional release under Section 1226, but that is no longer the statutory basis for his detention. Petitioner is now subject to mandatory detention under Section 1231(a)(2). *See Kapila v. Murray*, No. 1:24-CV-00914-SAB-HC, 2024 WL 5090012, at *3 (E.D. Cal. Dec. 12, 2024) ("Most appellate courts addressing this issue have held that a petition challenging detention under 8 U.S.C. § 1226(c) is moot when the detention authority shifts to § 1231" and collecting cases). Petitioner is therefore ordered to show cause as to why this petition should not be dismissed without prejudice for lack of subject matter jurisdiction based on mootness.

## CONCLUSION

For the reasons stated above, the Court DENIES the motion for a preliminary injunction and ORDERS Petitioner to show cause as to why the habeas petition should not be dismissed as moot. Petitioner shall file a response to this Order by November 6, 2025 and the government may file a reply by November 20, 2025.

This Order disposes of Docket No. 2.

**IT IS SO ORDERED.**

Dated: October 24, 2025

JACQUELINE SCOTT CORLEY
United States District Judge